# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

STATE OF MISSOURI, et al.,

*Plaintiffs-Appellants-Cross-Appellees*,

v.

JOSEPH R. BIDEN, JR., in his official capacity as the President of the United States of America, et al.,

*Defendants-Appellees-Cross-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Missouri
The Honorable District Court Judge John A. Ross
Case No. 4:24-cv-520-JAR

## PLAINTIFFS-APPELLEES' REPLY BRIEF IN SUPPORT OF THEIR EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

ANDREW BAILEY
  *Attorney General of Missouri*
JOSHUA M. DIVINE
  *Solicitor General*
REED C. DEMPSEY
  *Deputy Solicitor General*
SAMUEL FREEDLUND
  *Deputy Solicitor General*
ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
(573) 751-1800
josh.divine@ago.mo.gov

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.................................................................ii

**INTRODUCTION AND SUMMARY OF ARGUMENT** .....................1

**ARGUMENT**.............................................................................................2

I.    Plaintiffs easily have standing. ...........................................2

II.   Plaintiffs have a strong likelihood of success. ................6

     A.   Defendants' actions exceed statutory authority. ...................6

     B.   Defendants' actions flout the major questions doctrine. ........8

     C.   Defendants cannot forgive loans under their "hybrid" rule. ..................................................................................9

III.  Plaintiffs face irreparable harm, and the equities strongly favor the States. ..............................................11

**CONCLUSION**........................................................................................14

**CERTIFICATE OF COMPLIANCE** .................................................17

**CERTIFICATE OF SERVICE**............................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alabama Assn. of Realtors v. Dept. of Health and Human Services*,
    594 U.S. 758 (2021) ................................................................8

*Ascendium Educ. Sols., Inc. v. Cardona*,
    78 F.4th 470 (D.C. Cir. 2023) .............................................5

*Department of Commerce v. New York*,
    588 U.S. 752 (2019) ................................................................4

*H&R Block, Inc. v. Block, Inc.*,
    58 F.4th 939 (8th Cir. 2023) ...............................................5

*Labrador v. Poe*,
    144 S. Ct. 921 (2024) ...........................................................12

*Mozilla Corp. v. FCC*,
    940 F.3d 1 (D.C. Cir. 2019) ................................................6

*Ng v. Bd. of Regents of Univ. of Minnesota*,
    64 F.4th 992 (8th Cir. 2023) .............................................11

*Peoples v. U.S. Dep't of Agric.*,
    427 F.2d 561 (D.C. Cir. 1970) ............................................7

*State v. Biden*,
    10 F.4th 538 (5th Cir. 2021) .............................................12

*Texas Children's Hosp. v. Burwell*,
    76 F. Supp. 3d 224 (D.D.C. 2014) ....................................11

*Texas v. United States*,
    50 F.4th 498 (5th Cir. 2022) ...............................................5

*United Steel v. Mine Safety and Health Admin.*,
    925 F.3d 1279 (D.C. Cir. 2019) .........................................6

## Rules

Fed. R. App. P. 25(c)(2) ........................................................ 18

Fed. R. App. P. 27(d)(2)(C) .................................................. 17

Fed. R. App. P. 32(a)(5) ....................................................... 17

Fed. R. App. P. 32(a)(6) ....................................................... 17

Fed. R. App. P. 32(f) ............................................................ 17

## Regulations

34 C.F.R. § 209(c) ................................................................. 9

77 Fed. Reg. ...................................................................... 1, 3

88 Fed. Reg. ................................................................ 4, 8, 9

## Other Authorities

13A *Federal Practice & Procedure* § 3531.4 (3d ed.) ................................ 5

Stacey Cowley, *Student Loan Bills Are Dropping Next Month for Many, but There's a Hiccup*, New York Times (June 12, 2024) ..................... 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants cannot dispute that SAVE "fully replace[d]" REPAYE, nor that their new "hybrid" plan combines elements of SAVE with REPAYE to provide a repayment plan never used before June 24. Indeed, Defendants concede that borrowers on SAVE are *not* currently enrolled in REPAYE; they were "*previously* enrolled in REPAYE." Add.9 (emphasis added). Nor are Defendants able to deny that the Final Rule includes many forgiveness provisions—10-to-19-year forgiveness and *also* forgiveness after 20-to-25 years—and that the district court's injunction applies to *all* "loan forgiveness provisions" in the Rule. R. Doc. 35, at 44 (App.438).

So Defendants are left to assert that Plaintiffs are not harmed when payment amounts are slashed, unlike when accounts are forgiven. But slashed payments cannot be isolated from forgiveness. Zero-dollar payments *are* forgiveness. Also, the payment amounts drive borrowers to sign up for the plan in the first place. Previous ICR plans had "low participation." 77 Fed. Reg. 66,116. In contrast, millions enrolled in SAVE because it promised to slash payment amounts drastically.

Defendants next contend that Plaintiffs challenged only one forgiveness provision in the Final Rule—10-to-19 year "early forgiveness." But Plaintiffs already explained in their July 13 reply that Plaintiffs challenged *all* ICR forgiveness provisions of the Final Rule. *E.g.*, R. Doc. 1, at 60 (App.60); R. Doc. 10, at 33 (App.198); R. Doc. 26, at 61 (App.365). Tellingly, Defendants offer no response.

## ARGUMENT

### I.  **Plaintiffs easily have standing.**

Because Defendants declined to seek emergency relief from the district court's injunction holding that they lack authority to forgive under the ICR statute, they cannot deny that forgiveness harms the States. So Defendants try to decouple the payment and interest provisions from forgiveness and assert that Plaintiffs cannot show standing for those provisions. Not so.

**1.** Defendants cannot decouple payment amounts from forgiveness because, after the trial court enjoined all forgiveness provisions of the Final Rule, Defendants *continued* to forgive loans under their new "hybrid" plan. This forgiveness was not limited to borrowers previously on REPAYE; it extended to *millions* who were never on an ICR plan but

enrolled in SAVE because of the slashed payments. Before the payment and interest provisions, ICR plans had "low participation." 77 Fed. Reg. 66,116. Without them, millions never would have enrolled in SAVE. Defendants' post-hoc assertion that they can decouple these provisions from forgiveness is disingenuous in light of their recent actions.

**2.** Defendants' arguments are especially flawed because the payment-amount and interest provisions directly harm the States. As Plaintiffs note at 26–27 of their motion for an injunction pending appeal, MOHELA not only earns fees from servicing loans owned by the Federal Government; it also earned more than $51 million last year in interest from "FFEL" loans it owns directly. When borrowers refinance MOHELA-owned loans into Federal-owned loans to take advantage of SAVE, MOHELA loses that stream of revenue. *Id.* That is injury.[1]

Defendants say that the idea that borrowers will refinance loans because of the payment-amount and interest provisions is "purely speculative." Not so. As the Supreme Court explained in *Department of Commerce v. New York*, there is a critical distinction between a "theory

---

[1] Defendants make no sustained attempt at rebutting Plaintiffs' other theories of standing. R. Doc. 26, at 24–32 (App.328–36).

of standing" that "rest[s] on mere speculation about the decisions of third parties" and one that "relies ... on the predictable effect of Government action on the decisions of third parties."  588 U.S. 752, 768 (2019).  It is predictable that borrowers will act in their economic self-interest by refinancing to a plan that promises *no payments at all* for most borrowers and, for those who pay anything, requires repaying only 71 cents per dollar borrowed.  88 Fed. Reg. 43,880.

Even stranger is Defendants' suggestion (at 18) that MOHELA somehow *benefits* from borrowers refinancing MOHELA-owned loans into Federal-owned loans.  Unable to deny that MOHELA loses a stream of revenue from refinancing, Defendants say MOHELA benefits by receiving payment of full principal immediately.  Under Defendants' telling, it is irrational for anybody to lend money: they should prefer to retain full principal today rather than receive principal plus a stream of interest in the future.  That obviously makes no sense of the lending industry.

Further, Defendants' assertion of off-setting benefits has already been rejected.  The settled rule is that, as a matter of standing, "no attempt is made to ask whether the injury is outweighed by benefits."

Wright & Miller, 13A *Federal Practice & Procedure* § 3531.4 (3d ed.). "In resolving standing, courts do not engage in such an 'accounting exercise.'" *Texas v. United States*, 50 F.4th 498, 518 (5th Cir. 2022) (citing sources). Indeed, the district court already rejected Defendants' argument on the facts, finding that "purported benefits of the Final Rule to MOHELA do not offset the alleged and actual harms experienced by MOHELA." R. Doc. 35, at 38 (App.432). This finding is entitled to clear-error deference. *See H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023).

**3.** Even if Plaintiffs were not harmed directly from the payment and interest provisions, courts regularly hold that standing to challenge part of a rule is standing to challenge the whole rule. Defendants press here the exact argument they lost last year in *Ascendium Educ. Sols., Inc. v. Cardona*, 78 F.4th 470 (D.C. Cir. 2023). There, Defendants argued that the plaintiff established injury only as to one rule provision, and thus could not challenge other provisions. *Id.* at 478. The D.C. Circuit disagreed. Noting that the standard remedy in the APA context is "vacatur of the Rule," the D.C. Circuit held "Ascendium … has standing to bring any claims that could lead to the Rule's vacatur" even if there were no independent injury from the specific provisions attacked. *Id.*; *see*

*also Mozilla Corp. v. FCC*, 940 F.3d 1, 46–47 (D.C. Cir. 2019) ("When a party alleges concrete injury from promulgation of an agency rule, it has standing to challenge essential components of that rule ... even if they are not directly linked to Petitioners' injuries."). Here, where Plaintiffs have clearly established injury due to the Final Rule, they have standing to challenge other provisions to obtain vacatur.

The reduced payment and interest provisions are not severable from the forgiveness provisions, because they are inextricably intertwined. While the Final Rule discusses severability, it never claims that provisions should remain if a court holds (as the district court did) that there is no authority to forgive. Thus, the "default" remedy is that the Final Rule must be vacated. *E.g.*, *United Steel v. Mine Safety and Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action").

## II.     Plaintiffs have a strong likelihood of success.

### A.     Defendants' actions exceed statutory authority.

No doubt, the Secretary has a fair amount of discretion to set payment amounts under the ICR statute. But in this emergency posture, where Defendants have not challenged the district court's holding that Defendants lack authority to forgive loans, it necessarily follows that

there is a limit on that discretion: payment amounts *must* be high enough to repay loans within 25 years. The Secretary must "exercise[] his discretion in a manner consistent with the statute." *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 566 (D.C. Cir. 1970).

Instead, Defendants assert unbridled discretion to set payment amounts to $0 for 57% of SAVE participants. And they assert no limiting principle. Just the opposite, they assert an interpretation that would permit the Secretary to set payments to $0 for everybody.

On interest forgiveness, Defendants make no attempt to defend the district court's analysis, which erroneously conflated interest "accrual" with interest "capitalization." R. Doc. 25, at 47 (App.267). Instead, they now suggest (at 24) they are not forgiving interest at all, only deciding whether to include interest when calculating balances. These are verbal gymnastics. As they cannot deny, they are not requiring individuals to pay interest, and are instead picking up the tab. That is forgiveness, and it is expressly forbidden by statute." 20 U.S.C. § 1087e(e)(5) (stating "balance due" "shall" include "accrued interest.").

**B.    Defendants' actions flout the major questions doctrine.**

Unable to evade the conclusions of two district courts that the Final Rule overall flouts the major questions doctrine, Defendants assert (at 22–23) that the "provisions at issue" here, isolated from everything else, do not.  Not so.  These provisions cannot be isolated from forgiveness, which the district court held does flout the major questions doctrine.  Even standing alone, these provisions have "vast economic and political significance," triggering the major questions doctrine.  *Alabama Assn. of Realtors v. Dept. of Health and Human Services*, 594 U.S. 758, 764 (2021) (quotations omitted).    As already stated, the rule relies on an interpretation that would permit the Secretary to transform a student loan program into universal free college—undoubtedly a question of vast "political significance."  And the rule itself projects that each provision independently would have a ten-year cost of tens of billions of dollars: income threshold ($71.6 billion); payment cap ($59 billion); interest forgiveness ($17.2 billion).  88 Fed. Reg. 43,890.  These numbers trigger the doctrine.  *E.g.*, *Alabama Assn. of Realtors*, 594 U.S. at 764 (2021) ($50 billion sufficient).  Moreover, it is now undisputed that these projections *under*estimated the true cost by a factor of 3.  The Final Rule's cost

estimate was based on the (knowingly) false assumption that Defendants would prevail in *Biden v. Nebraska.* 88 Fed. Reg. 43,875. When Defendants did not, that tripled the cost of the rule. R. Doc. 10, at 32 (App.197). The true cost of these three provisions collectively is almost $450 billion.

## C. Defendants cannot forgive loans under their "hybrid" rule.

Defendants' assertion (at 25–26) that what they call their "hybrid" rule is not a "new rule" at all—but instead "application of well-established severability principles"—suffers from a glaring pitfall. Defendants assert that they are able to mix and match forgiveness provisions from REPAYE with payment amounts from SAVE, but Defendants have already admitted that SAVE "fully replace[d]" REPAYE. R. Doc. 52, at 2 (App.478). REPAYE existed at 34 C.F.R. § 209(c), which the Final Rule fully replaced with a new provision titled "Borrower eligibility for IDR plans." There is thus nothing to "revert" to because REPAYE no longer exists. Plaintiffs already pointed this out, at 23 of their opening brief, and Defendants offered no response.

Defendants also (wrongly) contend (at 25) that the district court injunction "does not prohibit the Department from granting forgiveness

pursuant to timelines that existed previously." But as Plaintiffs already explained in their reply brief in support of an administrative stay, the Final Rule includes not just a provision for forgiveness between 10 and 19 years, but also provisions for forgiveness after 20-to-25 years, and the district court "enjoin[ed] Defendants from *any* further implementation of the Final Rule's loan forgiveness *provisions*"—plural. R. Doc. 35, at 3 (App.397) (emphasis added).[2]

Even if Defendants were correct that they could forgive loans under a "preexisting" plan, their "hybrid" plan is not one. As explained in Plaintiffs' opening brief at 26–27, no borrower has ever received this mix of forgiveness under REPAYE and payment amounts under SAVE. Again, Defendants tellingly offer no response.

---

[2] For these reasons, this Court should reject Defendants' interpretation of the administrative stay, outlined in their July 19 "Notice of Compliance." Defendants cannot revert to previous ICR payment plans because every forgiveness provision from those plans was streamlined into the Final Rule, and Plaintiffs challenged *all* uses of ICR forgiveness in the Final Rule.

### III. Plaintiffs face irreparable harm, and the equities strongly favor the States.

**1.** Defendants' argument on irreparable harm rests on the same meritless arguments raised against standing. It should be rejected for the same reasons.

**2.** Their argument about "delay" fares no better. Plaintiffs properly sought only *prospective* relief in their preliminary-injunction motion—three months before the rule was scheduled to go into full effect. *See Ng v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 998 (8th Cir. 2023) ("Delay is only significant if the harm has occurred and the parties cannot be returned to the status quo."). Defendants stress that they implemented some provisions of the rule early. But Plaintiffs did not try to retroactively unwind anything, and for months the Missouri Attorney General's Office sought non-litigation remedies by participating in a negotiated rulemaking process to alter this Final Rule. R. Doc. 26, at 56 (App.360). That attempt was unsuccessful, but there is no delay where a party "pursued non-litigation avenues first." *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 245 (D.D.C. 2014).

**2.** The equities likewise favor Plaintiffs. Even assuming Defendants' harms were cognizable, when "the harms and equities are

very weighty on both sides," likelihood of success on the merits is dispositive. *See Labrador v. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring). Here, Plaintiffs established hundreds of millions of dollars in harm, lack of congressional authorization, and interference by Defendants in the policymaking ability of Congress. Likelihood of success on the merits, which Plaintiffs have established, is dispositive.

Defendants suggest (at 30) that an injunction would "detract from other critical priorities" and lead to "intense confusion."[3] But all alleged harm stems from Defendants' own actions. Here, after Plaintiffs challenged the Final Rule, Defendants plowed forward despite clear indications that the new provisions could be found unlawful. "The self-inflicted nature of the government's asserted harm severely undermines' its claim for equitable relief." *State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021).

Defendants also raise various new arguments in the Declaration of Denise L. Carter. Add.1. They tried this same gambit—through the

---

[3] Defendants attempt to muddy the waters by suggesting (at 30) that only "[a] subset of borrowers was placed in a brief forbearance," while others "received bills." Defendants omit that the "subset" who were placed in forbearance were *all borrowers with payments above $0.* Those who received "bills" were those who received "bills" requesting $0 payments.

same declarant—in the District of Kansas, where it was rightfully rejected because it was "the first time the court has seen these declarations or heard about any of the difficulties that they predict." *Alaska v. Dep't of Educ.*, No. 24-1057, Doc. No. 84 (June 24, 2024). These arguments are waived here for the same reason: they were not presented to the district court. Plaintiffs should not—in the limited 2,600 words available—be forced to respond to a brand-new, 14-page, single-spaced declaration.

The arguments are also self-defeating. Defendants admit they can resolve difficulties through administrative forbearance and still credit borrowers—*e.g.*, PSLF participants—toward statutorily authorized forgiveness. Add.9.[4]

Taken together, Defendants' arguments undercut their assertion of harm. Given this Court's administrative stay, the status quo now is that the Final Rule is paused. Lifting that pause would only create the alleged

---

[4] Just last month, Defendants clarified that administrative forbearance would "count as a qualifying month of payment for borrowers." Stacey Cowley, *Student Loan Bills Are Dropping Next Month for Many, but There's a Hiccup*, New York Times (June 12, 2024), https://www.nytimes.com/2024/06/12/business/student-loans-save-forbearance.html.

ping-pong effect Defendants now press. That would be especially true if this Court lifted the injunction only for the Supreme Court to reimpose it. For that reason, if the Court *declines* to enter an injunction pending appeal, it should leave the administrative stay in place long enough for Plaintiffs to seek relief from the Supreme Court.

## CONCLUSION

Plaintiffs respectfully request that the Court preserve the status quo from the administrative stay and enter an injunction pending appeal.

Dated: July 26, 2024

Respectfully submitted,

*/s/ Joshua M. Divine*
Joshua M. Divine

TIM GRIFFIN
 *Attorney General of Arkansas*
NICHOLAS J. BRONNI
 *Solicitor General*
DYLAN L. JACOBS
 *Deputy Solicitor General*
Office of the Arkansas Attorney
General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-3661
Nicholas.Bronni@arkansasag.gov
Dylan.Jacobs@arkansasag.gov

ASHLEY MOODY
 *Attorney General of Florida*
JAMES H. PERCIVAL
 *Chief of Staff*
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
james.percival@myfloridalegal.com

DREW H. WRIGLEY
 *Attorney General of North Dakota*
PHILIP AXT
 *Solicitor General*
Attorney General's Office
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

ANDREW BAILEY
 *Attorney General of Missouri*
JOSHUA M. DIVINE, #69875MO
 *Solicitor General*
REED C. DEMPSEY #1697941DC
 *Deputy Solicitor General*
SAMUEL FREEDLUND, #73707MO
 *Deputy Solicitor General*
MISSOURI ATTORNEY GENERAL'S
OFFICE
Post Office Box 899
Jefferson City, MO 65102
(573) 751-1800
josh.divine@ago.mo.gov
reed.dempsey@ago.mo.gov
samuel.freeland@ago.mo.gov

CHRISTOPHER M. CARR
 *Attorney General of Georgia*
STEPHEN J. PETRANY
 *Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

DAVE YOST
   *Attorney General of Ohio*
T. ELLIOT GAISER
   *Solicitor General*
MATHURA J. SRIDHARAN
   *Deputy Solicitor General*
Office of the Attorney General
365 East Broad Street
Columbus, Ohio 43215
Phone: (614) 466-8980
thomas.gaiser@ohioago.gov

GENTNER DRUMMOND
   *Attorney General*
GARRY M. GASKINS, II
   *Solicitor General*
Office of the Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:  (405) 521-3921
gentner.drummond@oag.ok.gov
garry.gaskins@oag.ok.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(C) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 2,599 words as determined by the word-counting feature of Microsoft Word 2016.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2016 in 14-point proportionally spaced Century Schoolbook font.

And this brief complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Windows Defender and no virus was detected.

*/s/ Joshua M. Divine*
Joshua M. Divine

## CERTIFICATE OF SERVICE

I certify that on July 26, 2024, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.  *See* Fed. R. App. P. 25(c)(2).

*/s/ Joshua M. Divine*
Joshua M. Divine