# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| STATE OF MISSOURI, et al.,<br>    *Plaintiffs-Appellees / Cross-Appellants,*<br><br>v.<br><br>JOSEPH R. BIDEN, JR., et al.,<br>    *Defendants-Appellants / Cross-Appellees.* | Nos. 24-2332,<br>24-2351 |

## EMERGENCY MOTION FOR CLARIFICATION

Defendants-cross-appellees (collectively, the Department) move for clarification of the scope of the injunction pending appeal issued by this Court. The Department respectfully requests that the Court rule on this motion by Friday, August 16, 2024, to avoid further disruption of student-loan programs unrelated to this litigation and to facilitate the Supreme Court's review of the Department's forthcoming application to vacate the injunction pending appeal.[1]

---

[1] The Court's clarification will also assist the parties in the parallel *Alaska* litigation in responding to the Tenth Circuit's order to submit supplemental briefs "defining the scope of the Eighth Circuit's injunction" and explaining how it might affect the *Alaska* case. Order, *Alaska v. U.S. Dep't of Educ.*, Nos. 24-3089 & 24-3094 (Aug. 12, 2024) (ordering briefs to be filed by noon MDT on August 19).

This litigation involves a challenge to a rule adopted by the Department entitled *Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43,820 (July 10, 2023) (the Final Rule). As the government previously explained, the Final Rule made various changes to the REPAYE plan, a previously existing income contingent repayment plan, and provides that this newly amended version of REPAYE could also be referred to as the SAVE plan. But the Final Rule did more than amend specific regulations governing REPAYE. Rather, as explained by the Department, the Final Rule adopted new regulations that "streamline and standardize the Direct Loan Program repayment regulations by categorizing repayment plans into three types": "(1) fixed payment repayment plans," "(2) income-driven repayment (IDR) plans," which include both income contingent repayment (ICR) plans and income-based repayment (IBR) plans, and "(3) the alternative repayment plan." 88 Fed. Reg. at 43,820. Thus, the regulatory text adopted by the Final Rule governs all three types of repayment plans. *See id.* at 43,899-905. The Final Rule also makes various changes that apply to IBR plans and to ICR plans other than REPAYE (i.e., the original ICR plan and PAYE), including amending the

2

regulatory definition of "family size," *see id.* at 43,856 ("The new family size definition . . . will apply to the PAYE, IBR, and [original] ICR plans."), eliminating "burdensome and confusing" requirements relating to annual income recertification, *id.* at 43,865 (explaining that the Department "simplif[ied] the annual income recertification process" for all "borrowers in IDR plans"), and crediting periods of deferment caused by cancer treatment and military service toward forgiveness, *id.* at 43,903 (providing that "cancer treatment" and "military service" deferments will count towards forgiveness under "all IDR plans"); *see generally id.* at 43,898 ("The Department amended [34 C.F.R.] § 685.209 to include regulations for all of the IDR plans . . . . These amendments include changes to the PAYE, REPAYE, IBR and ICR plans.").

This Court's injunction pending appeal provides that "for any borrower whose loans are governed in whole or in part by the terms of" the Final Rule, the Department is "enjoined from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions." Op. 9. Because the Final Rule promulgates regulatory text that governs all ICR and IBR plans, the text of the injunction could be understood to prohibit all forgiveness—

3

regardless of the underlying authority—for any borrower enrolled in one of these plans. For example, borrowers enrolled in an ICR plan may become eligible for Public Service Loan Forgiveness (PSLF), *see* 20 U.S.C. § 1087e(m), but the injunction could be understood to prohibit forgiveness because those borrowers' loans are governed at least in part by the Final Rule.

The Department does not believe, however, that the Court intended to sweep so broadly. For example, elsewhere in the opinion, the Court stated that Congress had imposed a "clear statutory requirement that loans in certain programs, such as IBR plans, be canceled." Op. 7; *see* 20 U.S.C. § 1098e(b)(7). Both plaintiffs and the district court have identified the PSLF program as another example. *See* Mot. Injunction Pending Appeal 7; R. Doc. 35, at 5-6, 44-45.[2] This Court also stated that "borrowers who have remained in PAYE . . . are not impacted" by plaintiffs' request for injunctive relief. Op.

---

[2] Notably, plaintiffs have never sought to enjoin forgiveness under IBR or PSLF. *See* R. Doc. 48, at 2 ("Defendants may still, of course, use authority other than ICR authority to forgive loans, such as authority under the Income-Based Repayment program and the Public Service Loan Forgiveness program.").

4

9.[3] The Department therefore believes that the Court did not intend to enjoin either (1) loan forgiveness offered under statutory authorities other than ICR (such as IBR or PSLF), or (2) loan forgiveness offered to borrowers enrolled in previously existing ICR plans (i.e., the original ICR plan or PAYE) on timelines established as part of those plans. Rather, in light of the full opinion, the Department understands the Court's objective with respect to forgiveness to be an injunction of any forgiveness, on any timeline, offered to borrowers enrolled in the SAVE plan (also known as REPAYE).

The Department respectfully seeks clarification of this Court's order to confirm that its understanding of the Court's injunction is correct. The Department further respectfully requests that this Court rule on the motion

---

[3] The omitted language referred to borrowers who remain on REPAYE, suggesting that the Court understood REPAYE and SAVE to be different plans. In fact, SAVE and REPAYE are the same plan. *See* 88 Fed. Reg. at 43,822 (explaining that the Department did not "creat[e] another repayment plan" but rather "reform[ed] the current REPAYE plan" and "decided to rename REPAYE" as SAVE). Thus, there are no borrowers on REPAYE that would not be affected by an injunction directed at the SAVE plan. The Department understands the Court to refer to borrowers on ICR plans that do not include the features of the Final Rule specifically challenged by plaintiffs, notably the revised payment-threshold provisions and the shortened timeline to forgiveness for certain smaller loans. Currently, this group consists of borrowers on the original ICR plan and PAYE.

for clarification by August 16 to avoid further disruption of student-loan programs that the Court appears not to have intended to enjoin and to facilitate the Supreme Court's consideration of the government's forthcoming application to vacate the injunction.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
 /s/ *Thomas Pulham*
THOMAS PULHAM
SIMON C. BREWER
SARAH N. SMITH
*Attorneys*
*Civil Division, Appellate Staff*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W., Room 7529*
*Washington, D.C. 20530*
*(202) 616-5367*

AUGUST 2024

# CERTIFICATE OF COMPLIANCE

This response to a motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,047 words. It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Expanded BT 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

/s/ *Thomas Pulham*
Thomas Pulham

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2024, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Thomas Pulham*
Thomas Pulham